IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FOUNTAINCOURT HOMEOWNERS'
ASSOCIATION and FOUNTAINCOURT
CONDOMINIUM OWNERS'
ASSOCIATION,

        Plaintiffs,

   vs.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,

        Defendant.

Civil No. 09-655-AA
OPINION AND ORDER

---

Anthony Rafel
Rafel Law Group PLLC
1100 SW 6th Ave., Ste. 1600
Portland, Oregon 97204

Robert O'Halloran
McEwen Gisvold LLP
1600 Standard Plaza
1100 SW 6th Avenue
Portland, Oregon 97204
    Attorneys for plaintiffs

Todd S. Baran
Todd S. Baran, PC
4004 SE Division Street
Portland, Oregon 97202-1645
    Attorney for defendant

Page 1 - OPINION AND ORDER

AIKEN, Judge:

　　Plaintiffs filed a motion for partial summary judgment
regarding the multi-unit exclusion.  That motion is denied.

BACKGROUND

　　Plaintiffs filed a breach of contract action against
defendant insurance company alleging bad faith relating to
construction defects at the FountainCourt condominium and
townhomes in Beaverton, Oregon.  The buildings at issue at
FountainCourt contain both condominium units and townhome units.
Plaintiffs are the two owners' associations representing the
condominium and townhome owners.

　　Defendant issued to Sideco, Inc., the siding subcontractor
during construction of FountainCourt, two commercial general
liability insurance policies, effective from May 1, 2004 to May
1, 2005, and May 1, 2005 to May 1, 2006 ("Insurance Policies").
The general contractor, Legend Homes Corporation ("Legend
Homes")is an additional named insured on each of the two
Insurance Policies.  Each of the two Insurance Policies
separately promised coverage of up to $1,000,000 per occurrence,
$2,000,000 general aggregate, in the event that Sideco or Legend
Homes became legally obligated to pay for damages due to bodily
injury or property damage.

　　Plaintiffs sent notices of defect to the project developers
including Legend Homes, and ultimately filed a lawsuit.  The

Page 2 - OPINION AND ORDER

developers and contractor then filed a Third-Party Complaint
naming various subcontractors from the project.  The Third-Party
Complaint was ultimately amended to include Sideco, Inc.

Legend Homes then tendered defense and indemnity of the
claims against it regarding FountainCourt to defendant.
Defendant denied the tender relying in large part on an exclusion
in the Insurance Policies entitled "Exclusion - Multi-Unit New
Residential Construction (Greater than Eight Units)" (the "Multi-
Unit Exclusion").

There are 11 structures at issue in FountainCourt, each
containing multiple residential dwelling units with garages and
individual entrances.  The 11 structures are designated
alphabetically A through K.

Structure A contains 4 townhouse units and 2 condominium
units.

Structure B contains 5 townhouse units and 2 condominium
units on one side, attached to 2 condominium units and 5
townhouse units on the other side.  The two sets of 5
townhouse units do not connect, but all 4 condominium
units connect.

Structure C contains 4 townhouse units and 2 condominium
units on one side, attached to 2 condominium units and 4
townhouse units on the other side.  The two sets of 4
townhouse units do not connect, but all 4 condominium
units connect.

Structure D contains 3 townhouse units and 2 condominium
units.

Structure E is comprised of two separate buildings that
do not touch, one containing 4 townhouse units and one
containing 8 townhouse units.

Structure F contains 3 townhouse units and 2 condominium units on one side, attached to 2 condominium units and 3 townhouse units on the other side.  The two sets of 3 townhouse units do not connect, but all 4 condominium units connect.

Structure G contains 4 townhouse units and 2 condominium units on one side, attached to 2 condominium units and 3 townhouse units on the other side.  The two sets of townhouse units do not connect, but all 4 condominium units connect.

Structure H contains 3 townhouse units and 2 condominium units on one side, attached to 2 condominium units and 3 townhouse units on the other side.  The two sets of 3 townhouse units do not connect, but all 4 condominium units connect.

Structure J contains 3 townhouse units and 2 condominium units on one side, attached to 2 condominium units and 4 townhouse units on the other side.  The two sets of townhouse units do not connect, but all 4 condominium units connect.

Structure K contains 4 townhouse units and 2 condominium units.

<u>STANDARDS</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©.  Substantive law on an issue determines the materiality of a fact.  <u>T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.</u>, 809 F.2d 626, 630 (9th Cir. 1987).  Whether the evidence is such that a reasonable jury could return a

Page 4 - OPINION AND ORDER

verdict for the nonmoving party determines the authenticity of a dispute. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. <u>Id.</u> at 324.

Special rules of construction apply when evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>T.W. Electrical</u>, 809 F.2d at 630.

DISCUSSION

The Multi-Unit Exclusion provides in relevant part:

This insurance does not apply to "bodily injury" or "property damage" arising out of:

1. "Your work" in connection with pre-construction, construction, post-construction of any "multi-unit residential building[.]"

2. Any of "your products" which will or have become a part of the real property of any 'multi-unit residential building.'

This exclusion does not apply to "your work" in connection with remodeling, maintenance or repair.

Section V. Definitions

"Multi-Unit Residential Building"  means a condominium,
townhouse, apartment or similar structure, each of which
has greater than eight units built or used for the
purpose of residential occupancy.

Plaintiffs argue that the Multi-Unit Exclusion excludes

coverage for only 10 townhouse units in Structure B.  Every other

FountainCourt building has 8 or fewer townhouse units and 8 or

fewer condominium units.  Defendant contends that the Multi-Use

Exclusion excludes coverage for all units in Buildings B,C,F,G,H

and J arguing that the Multi-Unit Exclusion precludes coverage

for any building at FountainCourt that has greater than 8 total

units, regardless of the type of such units (townhouse or

condominium).

At issue in this lawsuit is whether the Multi-Unit Exclusion

applies to Buildings C,F,G,H and J.  There is no dispute that the

exclusion does not apply to Buildings A, D, E, or K.  Buildings

A, D and K contain fewer than 8 units (townhouses or

condominiums) and Building E is comprised of two separate

buildings that do not touch, one building containing 4 townhouse

units and the other building containing 8 townhouse units.  The

parties also agree that the exclusion does apply to Building B

containing 10 townhouse units, but disagree as to its application

to the 4 condominium units in that building.

In essence, the court must decide whether and to what extent

Sideco's work on the FountainCourt project is excluded from

Page 6 - OPINION AND ORDER

coverage by the Multi-Unit Exclusion.  Under Oregon law, the
interpretation of the meaning of an insurance policy is a
question of law for the court.  Hoffman Construction Co. v. Fred
S. James & Co., 313 Or. 464, 469, 836 P.2d 703 (1992).  Following
Hoffman's directives: unambiguous language is enforced as
written, and if language is ambiguous, "in the light of, among
other things, the particular context in which that term is used
in the policy and the broader context of the policy as a whole,"
then as a "last step," the court is to apply the maxim that
ambiguities are to be resolved in favor of coverage." Farmers
Ins. Co. v. Munson, 145 Or. App. 512, 521, 930 P.2d 878
(1996)(quoting Hoffman, 313 Or. at 469).  The governing rule in
the construction of an insurance policy is to ascertain the
intent of the parties "based on the terms and conditions of the
insurance policy."  Hoffman, 313 Or. at 469.  That analysis
begins with the wording of the policy, applying any definitions
contained in the policy, and otherwise presuming that words have
their plain, ordinary meanings.  Id. at 469-70.

       Plaintiffs assert first that the Multi-Use Exclusion does
not apply to the FountainCourt buildings because "it does not
narrowly extend to mixed use buildings at all and the provision
must be interpreted narrowly and construed against the insurer."
Pl's Memo in Support, p. 9, fn 4.  Plaintiff argues that the
phrase "similar structure" does not include mixed-use buildings

such as the buildings at issue here, which contain both
condominium and townhouse units.  I disagree and find the phrase
"similar structure" refers to other structures similar to
apartments, condominiums and townhouses.

      Plaintiff next argues that even if the Exclusion applies, it
excludes coverage only for the ten townhouse units in Building B.
Plaintiff contends that the provision is ambiguous because it is
just as reasonable to exclude mixed-use buildings, which contain
both townhomes and condominium units, as to include them in the
definition.

      I disagree and find that the Exclusion precludes coverage
for any building at FountainCourt that has greater than 8 <u>total</u>
units, regardless of which type of unit (townhouse or
condominium).  Critical to this finding is the Exclusion's
requirement that the structure must be "built or used for the
purpose of residential occupancy," meaning that a deciding factor
in whether a building falls within the definition is its intended
or actual use.  Therefore, a building falls within this
definition only if it is constructed for the purpose of
residential occupancy, or is actually so used.  A building falls
within the definition no matter whether the residential units
within the structure are owned by one entity or several.
Plaintiff's argument that the townhouses and condominiums are
owned by two separate and distinct legal associations is

irrelevant when deciding whether a building falls within the
definition of "Multi-Use Residential Building."  There is no
dispute that the individual units in the buildings were all built
to be used, and are being used, as residences.  The fact that the
units are "mixed ownership" (some townhouses, some condominiums)
does not affect the application of the Multi-Unit Exclusion and
the fact that the units were built for and are being used as
Residential units.

Plaintiff's argument that the application of the Exclusion
depends on whether the owner(s) of at least nine residential
units in a building have the same rights, or incidents of
ownership, is flawed.  If that were the correct interpretation,
it would be possible for owner(s) of units within a multi-unit
structure to avoid the application of the Multi-Use Exclusion in
a builder's insurance policy simply by changing the incidents of
ownership.  Specifically, a nine-unit building that started as a
condominium, thus triggering the Multi-Unit Exclusion, could be
divided into condominiums and townhomes, or into condominiums and
apartments to reduce the total number of residential units that
share common incidents of ownership in order to fall below the
nine unit threshold of the Multi-Unit Exclusion.  I find that the
exclusion unambiguously applies to units that are "built or used
for [residences]."  Under this language, a structure that
contains more than eight residential units when "built" will

trigger the exclusion, even if some of those units are later
converted to other uses.  If the court examines the purpose of
the Exclusion, it is reasonable to assume that the Exclusion was
designed to avoid certain risks that are irrelevant to the
incidents of unit ownership.  Rather, those risks are created by
the use of those units; specifically, residential use of multiple
units within a single structure presents the same risks
regardless of the ownership rights of the unit owners.  In
support, the Exclusion lists the multi-unit buildings:
condominium, townhouse, apartment and then adds "or similar
structure."  The term "structure" does not refer to legal
ownership of the buildings or units, instead it refers to the
physical composition of the building.  The Exclusion applies to
any building that is similar in structure to a "condominium,"
"townhouse," or "apartment," no matter how the units in the
structure are legally owned.  The critical structural features of
condominiums, townhouses and apartments are the contiguous walls,
floors and roofs.  Because each of the individual buildings with
the FountainCourt development share those same structural
features, damage to any one of those structures that contain more
than eight residential units triggers the Multi-Use Exclusion.
Further, I find that the phrase "each of which [has greater than
eight units built]" in the Exclusion refers to a structure and
not to units within a structure.  Again, the Multi-Unit Exclusion

Page 10 - OPINION AND ORDER

focuses on the type of use ("purpose of residential occupancy") rather than the incidents of ownership.

Therefore, I find that the Exclusion applies if a structure similar to a condominium, townhouse or apartment was "built" to include more than eight residential units, regardless of how the individual units are owned.

                          <u>CONCLUSION</u>

Plaintiffs' motion for partial summary judgment (doc. 9) is denied.

IT IS SO ORDERED.

     Dated this _10_ day of November 2009.



                      _____
                              Ann Aiken
                      United States District Judge

Page 11 - OPINION AND ORDER